IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2017 Term

_____

No. 16-0645

_____

FILED

November 9, 2017

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LAWYER DISCIPLINARY BOARD,
Petitioner

v.

ALFRED JOSEPH MUNOZ,
Respondent

_____

Disciplinary Proceeding

SANCTIONS IMPOSED

_____

Submitted: October 3, 2017
Filed: November 9, 2017

Jessica H. Donahue Rhodes, Esq.        Harry G. Deitzler, Esq.
Lawyer Disciplinary Counsel             Hill, Peterson, Carper, Bee & Deitzler, PLLC
Office of Disciplinary Counsel           Charleston, West Virginia
Charleston, West Virginia                Counsel for the Respondent
Counsel for the Petitioner

JUSTICE WORKMAN delivered the Opinion of the Court.
CHIEF JUSTICE LOUGHRY dissents and reserves the right to file a dissenting opinion.

1. "A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record." Syl. Pt. 3, *Comm. on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994).

2. "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Comm. on Legal Ethics of the W. Va. State Bar v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984).

3. "'"In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the

ethical standards of the legal profession." Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987).' Syl. Pt. 5, *Committee on Legal Ethics v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989)." Syl. Pt. 7, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998).

4. "Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: 'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.'" Syl. Pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998).

5. "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. Pt. 2, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

6. "Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses." Syl. Pt. 3, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

7. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. Pt. 4, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

Workman, Justice:

The Hearing Panel Subcommittee (hereinafter "HPS") of the West Virginia Lawyer Disciplinary Board (hereinafter "LDB") recommends sanctions for attorney Alfred Joseph Munoz[1] for violations allegedly committed in separate events: (1) his personal behavior, allegedly lying to a magistrate about whether he had orally requested continuances in a criminal DUI case against him; and (2) his professional misconduct, including delays and failure to communicate with clients, while working as an attorney in habeas corpus proceedings.

The HPS recommends the following sanctions: suspension of law license for one year; compliance with the mandates of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure consequent to his suspension;[2] requirement to petition for reinstatement of law license; completion of an additional six hours of continuing legal education during the current reporting period, including three hours in the area of ethics and office management and three hours in the representation of clients in petitions for writ of habeas corpus; one year

---

[1]Mr. Munoz was admitted to the West Virginia State Bar in 2006 and practices law in Parkersburg, West Virginia.

[2]Rule 3.28 requires suspended attorneys to inform clients of the suspension and file an affidavit with this Court.

1

of supervised practice subsequent to reinstatement; and payment of costs of these proceedings.

Mr. Munoz objects to the HPS recommendations and argues that sufficient sanctions would include suspension from the practice of law for one month; compliance with Rule 3.28 of the Rules of Lawyer Disciplinary Procedure regrading the duties of a suspended lawyer; automatic reinstatement following the suspension;[3] an additional six hours of continuing legal education with three hours of instruction on the representation of habeas corpus cases and three hours of ethics; fifty hours of community service in his local community; prohibition from acceptance of court-appointed habeas corpus cases for one year; and the payment of costs of the proceeding.

Subsequent to review of the record submitted, the parties' arguments, and applicable legal precedent, this Court finds clear and convincing evidence to support the factual findings of the HPS but finds its sanction recommendations overly punitive. Thus, we impose the following sanctions: suspension of law license for three months; compliance with the mandates of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure consequent to his suspension; automatic reinstatement following the suspension; completion of an

---

[3]Rule 3.31 of the Rules of Lawyer Disciplinary Procedure permits a process of automatic reinstatement if an attorney is suspended for a period of three months or less.

additional six hours of continuing legal education during the current reporting period, including three hours in the area of ethics and office management and three hours in the representation of clients in petitions for writ of habeas corpus; and payment of costs of these proceedings.

## I.  Factual and Procedural History

### A.  DUI Charges and Proceedings

Mr. Munoz was charged with Driving Under the Influence [hereinafter "DUI"] in Doddridge County, West Virginia, on September 22, 2012, and the case was assigned to Magistrate Jamie Moran.  Mr. Munoz filed a speedy trial by jury demand on October 12, 2012.  Magistrate Moran continued the matter on November 8, 2012, February 13, 2013, and May 9, 2013, allegedly based upon oral requests for continuances made by Mr. Munoz. During a June 21, 2013, hearing, Mr. Munoz moved to dismiss the charge based upon the absence of a jury and witnesses for the State.  The prosecuting attorney explained that Mr. Munoz had informed her and Magistrate Moran that he was going to enter a plea; thus, a jury had not been called for that hearing date.  Mr. Munoz informed the magistrate that the matter had *not* been continued at his request and thereby convinced the magistrate to dismiss the original DUI charge based upon failure to prosecute in a timely fashion.

3

On August 30, 2013, the DUI charge was reissued, in addition to two counts of driving on a suspended license. The case was assigned to Magistrate Adams. On February 7, 2014, Mr. Munoz moved to dismiss the reissued charge. Magistrate Adams held a hearing on February 18, 2014. Mr. Munoz argued that he should have been tried within one year of the September 22, 2012, incident and that there was no overt act by Mr. Munoz to delay the trial. Magistrate Moran testified that Mr. Munoz requested the continuances, and his motion to dismiss was ultimately denied. By order dated January 22, 2015, the Circuit Court of Doddridge County denied Mr. Munoz's petition to prohibit the magistrate court from proceeding against him on a reissued charge of DUI. Mr. Munoz appealed, and this Court, in a memorandum decision, *Munoz v. Adams*, No. 15-0140, 2015 WL 7628822 (W. Va. Nov. 23, 2015), affirmed the denial and held that the DUI charge against Mr. Munoz could be re-filed because the magistrate testified that Mr. Munoz had been granted multiple continuances, by his *own* request. Mr. Munoz claimed the *written* record was silent as to whether he requested any continuances. The magistrate, however, testified that she allowed him to *orally* move for continuances because she thought he could be trusted as an officer of the court. This Court held that "[t]he record in this matter is clear that petitioner [Mr. Munoz] moved for, and received, at least three continuances in the proceedings below." *Munoz*, 2015 WL 7628822 at *2.

4

The ODC initiated a disciplinary action based upon Mr. Munoz's conduct in the magistrate court proceeding. The HPS ultimately found that Mr. Munoz displayed a marked lack of candor with the magistrate during the June 21, 2013, hearing in which Mr. Munoz incorrectly stated that the matter had *not* been continued at his request and convinced the magistrate to dismiss the DUI charge. The HPS found that Mr. Munoz violated Rules 8.1(a), 8.4(c), and 8.4(d) of the West Virginia Rules of Professional Conduct, based upon his false statement regarding the requests for continuances and his denial that he said he planned to enter a plea. The HPS further found a violation of Rule 3.3 for his false statements regarding requests for continuance. A violation of Rule 8.1(b) was also found, based upon his failure to respond to ODC inquiries.[4]

---

[4]This Court approved amendments to the West Virginia Rules of Professional Conduct, effective January 1, 2015. Mr. Munoz's conduct related to his DUI criminal case occurred both before and after the amendments; the minor modifications to the rules do not affect this case. Rules 8.4(c) and 8.4(d) provide that it is professional misconduct for a lawyer to "(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice. . . ."

Rule 3.3(a)(1) provides that a "lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer. . . ." Rule 8.1(a) provides that a lawyer, "in connection with a disciplinary matter, shall not: (a) knowingly make a false statement of material fact. . . ." Rule 8.1(b) prohibits the failure "to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

5

B. Representation of Client Carl Lockhart

In addition to violations relating to Mr. Munoz's own criminal DUI proceedings, the HPS also found violations regarding Mr. Munoz's representation of clients in two separate habeas corpus proceedings. Complainant Carl Lockhart filed a September 2015 ethics complaint against Mr. Munoz, alleging that Mr. Munoz had not responded to letters in March and May 2015 regarding his court-appointed representation of Mr. Lockhart. By June 2015, Mr. Lockhart filed a motion for appointment of new counsel.[5] Despite an order directing Mr. Munoz to file a petition for habeas corpus on behalf of Mr. Lockhart, there had been no communication between Mr. Lockhart and Mr. Munoz by September 2015.

Disciplinary Counsel wrote to Mr. Munoz on September 15, 2015, requesting a response to Mr. Lockhart's complaint. Upon the second request for a response, Mr. Munoz filed a response to the complaint on October 16, 2015, indicating that he was made aware of the appointment on March 13, 2015, obtained the file from Mr. Lockhart's former counsel, began a review,[6] and obtained a scheduling order.

By letter dated December 14, 2015, Disciplinary Counsel asked Mr. Munoz why he had failed to file the petition by July 31, 2015, or, in the alternative, file a motion to

_____

[5]New counsel was eventually appointed for Mr. Lockhart on October 5, 2015.

[6]Mr. Munoz also indicated that Mr. Lockhart had requested research into alternate avenues of relief.

6

withdraw prior to the July 31, 2015, deadline for the petition. When Mr. Munoz appeared before the ODC, he admitted that he had "los[t] track of [the] case and that he "should have been more diligent and correspond[ed] with Mr. Lockhart in a more timely manner." The HPS ultimately found that Mr. Munoz failed to act with reasonable diligence in the Lockhart case by not filing a habeas petition and by failing to move to withdraw as counsel in a timely fashion.

The HPS deemed Mr. Munoz's representation of Mr. Lockhart deficient, finding violations of Rule 1.3 and 8.4(d)[7] for failing to file a habeas corpus petition and failing to timely withdraw; Rule 1.4(a)(2), 1.4(a)(3), and 1.4(a)(4) for failing to contact his client following his appointment and communicate with his client generally; Rule 3.2 for failure to take reasonable steps to expedite litigation; Rule 8.1(a) during disciplinary matters by making false statements regarding filing a timely motion to withdraw; and Rule 8.1(b) for failure to respond to ODC's letters.

---

[7]All of the rule violations relating to Mr. Munoz's work for Mr. Lockhart fall under the amended Rules of Professional Conduct. In addition to the rules already quoted, the other rules allegedly violated in the Lockhart matter include Rule 1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client."); Rules 1.4(a)(2), 1.4(a)(3), and Rule 1.4(a)(4) (requiring a lawyer to "(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished; (3) keep the client reasonably informed about the status of the matter; (4) promptly comply with reasonable requests for information. . . ."); and Rule 3.2 ("A lawyer shall make reasonable efforts to expedite litigation consistent with the interest of the client.").

7

C.  Representation of Client Jonathan Bourne

The HPS also found violations by Mr. Munoz in connection with his representation of Jonathan S. Bourne.  Mr. Munoz was appointed to represent Mr. Bourne on April 20, 2015.  On September 30, 2015, Mr. Bourne filed a complaint against Mr. Munoz, alleging that he had failed to communicate with him in any manner.  Mr. Munoz had not investigated the matter and had missed deadlines in the scheduling order, resulting in the filing of a motion to dismiss by the Attorney General's Office.  Mr. Munoz ultimately withdrew as counsel for Mr. Bourne.

On September 30, 2015, Disciplinary Counsel wrote to Mr. Munoz and requested a response to the Bourne complaint.  By responsive letter, Mr. Munoz explained that he became aware of his appointment on April 27, 2015, acquired Mr. Bourne's file, and conducted a review.  He filed the motion to withdraw as counsel in July 2015 due to difficulties communicating with the presiding judge.[8]

The HPS concluded that Mr. Munoz's representation of Mr. Bourne was deficient and found a violation of Rules 1.3 and 8.4(d), based upon Mr. Munoz's failure to

---

[8]Specifically, Mr. Munoz contends that after Judge Sweeney's recusal and Judge Stone's appointment on this matter, Mr. Munoz was instructed to continue to submit all pleadings through Judge Sweeney's office.  Copies of pleadings were apparently subsequently submitted to Judge Stone.  Mr. Munoz indicated that he withdrew from the case due to difficulties communicating with Judge Stone.

file a habeas corpus petition. The HPS further found a violation of Rules 1.4(a)(2), 1.4(a)(3), and 1.4(a)(4) by Mr. Munoz's failure to communicate with Mr. Bourne after being appointed. Further, the HPS found a violation of Rule 3.2 through Mr. Munoz's failure to expedite litigation. Mr. Munoz's failure to respond to ODC inquiries constituted a violation of Rule 8.1(b). The HPS also found a violation of Rule 8.1(a) based upon Mr. Munoz's false statement to the ODC about submitting motions and scheduling orders in the Bourne case.[9]

### D. The HPS Recommended Sanctions

The HPS found that the aggregation of the client-related misconduct and the misrepresentation of issues surrounding his own DUI criminal case constituted egregious misconduct warranting substantial discipline. It also identified certain aggravating factors, including the receipt of prior admonishments on issues of client communication and diligence.[10] The HPS further noted dishonest and selfish motivation in Mr. Munoz's DUI criminal case, false statements during the disciplinary process, and refusal to acknowledge the misconduct.

---

[9]The rule violations found in the Bourne case are identical to those found in the Lockhart case.

[10]The HPS indicated that nine ethics complaints have been filed against Mr. Munoz since 2008, regarding such issues as lack of diligence, failure to communicate, and failure to expedite litigation.

The HPS found no mitigating factors, specifically noting that Mr. Munoz's ten-year practice of law was neither an aggravating nor a mitigating factor. Moreover, although Mr. Munoz submitted a January 29, 2012, letter[11] from a counselor regarding his alcoholism and domestic difficulties, no testimony was provided from either Mr. Munoz or his treatment provider regarding counseling or treatment issues.

The ODC agrees with the recommendations of the HPS. Mr. Munoz objects to the HPS's recommended disposition of the charges against him, and this matter is now before this Court for final determination of an appropriate resolution.

## II. Standard of Review

This Court reviews the recommended decisions of the HPS *de novo*, holding as follows in syllabus point three of *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994):

> A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings

---

[11]The HPS also emphasizes that the letter was dated eight months prior to Mr. Munoz's arrest for DUI in September 2012.

are not supported by reliable, probative, and substantial evidence on the whole record.

Although this Court affords substantial deference to the Board, this Court ultimately determines appropriate resolutions of lawyer disciplinary proceedings. As we explained in syllabus point three of *Committee on Legal Ethics of the West Virginia State Bar v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984), "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Guided by these standards, we proceed to consider the legal arguments.

III. Discussion

Rule 3.7 of the Rules of Lawyer Disciplinary Procedure "requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and convincing evidence." Syl. Pt. 1, in part, *Lawyer Disciplinary Bd. v. McGraw*, 194 W.Va. 788, 461 S.E.2d 850 (1995). This Court's review of the record reveals clear and convincing evidence that Mr. Munoz committed multiple violations through his deficient provision of legal services to Mr. Lockhart and Mr. Bourne. He failed to properly serve as appointed counsel for the purpose of filing habeas corpus petitions for both clients, and he failed to adequately communicate with the clients, causing delay in resolution of their cases. Moreover, he displayed a lack of candor in responding to the inquiries of the ODC.

11

We also find clear and convincing evidence in the record to support the HPS's conclusion that Mr. Munoz committed multiple violations during the handling of his criminal DUI case. As referenced above, this Court addressed Mr. Munoz's behavior in *Munoz* and found the record "clear that petitioner [Mr. Munoz] moved for, and received, at least three continuances in the proceedings below." *Munoz*, 2015 WL 7628822 at *2. The HPS found that he misrepresented the truth regarding his own requests for continuances in order to obtain a dismissal of the charges against him. Although Mr. Munoz attempts to obfuscate the issue by contending that the magistrate's testimony conflicted with the prosecutor's testimony regarding common practices of requiring *written* motions for continuances, we find the discrepancies in the magistrate and prosecutor testimony to be only minimally relevant to the issue of Mr. Munoz's sanctionable conduct.[12]

As this Court has repeatedly emphasized, sanctions in lawyer disciplinary cases must be designed to "serve as a deterrent to other attorneys." *McCorkle*, 192 W. Va. at 291, 452 S.E.2d at 382. As we explained in syllabus point seven of *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998):

---

[12]The testimony of the prosecuting attorney and the magistrate differed to the extent of their recitation of common practices regarding the frequency of permitting oral continuances and whether the continuances were jointly requested by Mr. Munoz and the prosecutor or simply requested by Mr. Munoz. Because Mr. Munoz claimed that he neither jointly nor independently requested continuances, we do not find these issues dispositive of this disciplinary matter.

12

"'In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.' Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987)." Syl. Pt. 5, *Committee on Legal Ethics v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989).

In syllabus point four of *Jordan*, this Court also held:

Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Our review of this matter reveals violation of all the *Jordan* factors by Mr. Munoz. His conduct in the habeas corpus appointed cases violated duties to his clients, and he acted intentionally, knowingly, and negligently in failing to exercise due diligence. Although Mr. Munoz attempts to minimize any client *injury*,[13] the obvious injury to them was

---

[13]In this vein, we note Mr. Munoz's contention that an attorney subsequently representing Mr. Bourne was able to expeditiously resolve the discovery issues and bring the case to a close. While the client apparently was well-served by new counsel, that result does

13

the delay of resolution of their cases and their understandable frustration with the system. Within the context of his own criminal DUI case, we agree with the factual findings of the HPS that Mr. Munoz's lack of candor concerning his requests for continuances was an overt attempt to misinform the court to garner a favorable result.

Regarding the fourth *Jordan* factor, this Court has explained that "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. Pt. 2, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

*Id.* at 210, 579 S.E.2d at 551, syl. pt. 3. The HPS did not find any mitigating factors in this case. We agree with that assessment, despite Mr. Munoz's protestations to the contrary. Mr.

---

not significantly diminish the severity of Mr. Munoz's own conduct.

14

Munoz was not a particularly inexperienced attorney, and he had several prior disciplinary complaints against him, some of which bear remarkable similarity to the present case.

Mr. Munoz argues that his personal issues and custody arrangement difficulties should be considered mitigating factors. He also touts his good reputation within the community, his election to the West Virginia State Bar Board of Governors, and his expression of remorse over the handling his clients' claims. We are also mindful of Mr. Munoz's argument that his client, Mr. Lockhart, had a history of complaining that attorneys fail to properly represent him.

The HPS also found several aggravating factors in this case. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." *Scott*, 213 W.Va. at 210, 579 S.E.2d at 551, syl. pt. 4. The HPS identified such aggravating factors as Mr. Munoz's prior disciplinary offenses; his dishonest or selfish motive in misrepresenting matters related to requesting continuances in his DUI case; his multiple offenses within this matter; his submission of false statements to disciplinary authorities; and his refusal to acknowledge misconduct in his DUI case. The HPS emphasizes that Mr. Munoz was specifically warned about his lack of diligence and failure to communicate on two other instances, also involving habeas corpus client representation. Mr. Munoz disagrees with the findings of the HPS and

15

denies any selfish or dishonest motivation in his DUI criminal case and also denies that he made false statements.

Based upon the record before this Court, including the arguments of the parties related to their differing perceptions of the circumstances surrounding the DUI continuances and the representation of the habeas corpus clients, we find the HPS recommended sanctions overly harsh and punitive. Where this Court has previously imposed a one-year suspension, as suggested by the HPS as a sanction in this case, there were additional aggravating circumstances or sanctionable conduct not present in this case. *See Lawyer Disciplinary Bd. v. Duffy*, 2017 WL 2626435 (W.Va. June 15, 2017) (memorandum decision) (suspending attorney for one year based on failure to file appeal for client, absence of court appearance for two clients for seven hearings, and repeated failures to respond to ODC); *Lawyer Disciplinary Bd. v. Thorn,* 236 W.Va. 681, 783 S.E.2d 321 (2016) (suspending attorney for one year based on failure to communicate with clients or respond to client inquiries, lack of work performance, failure to refund unearned fees, failure to provide accountings, and failure to respond to disciplinary matters, despite mitigating evidence of attorney's depression, absence of disciplinary history, and lack of selfish or dishonest motive); *Lawyer Disciplinary Bd. v. Santa Barbara*, 229 W.Va. 344, 729 S.E.2d 179 (2012) (suspending attorney for one year for allowing statute of limitations to expire, having insufficient funds in client's trust

16

account, failing to inform clients of case status, failing to perfect jurisdictional notice requirements, despite mitigating evidence of attorney's depression).

This Court finds the resolution fashioned by this Court will adequately serve to sanction Mr. Munoz and to "restore public confidence in the ethical standards of the legal profession." *See Walker*, 178 W.Va. at 150, 358 S.E.2d at 234, syl. pt. 3, in part. In *Lawyer Disciplinary Bd. v. Sullivan*, 230 W.Va. 460, 740 S.E.2d 55 (2013), for instance, an attorney was suspended for thirty days based upon his failure to assist a client in correcting criminal sentencing order, failure to keep the client properly informed, and failure to respond to the ODC. He also had five prior admonishments. *Id.* at 463, 740 S.E.2d at 58; *see also Lawyer Disciplinary Bd. v. Palmer*, 238 W.Va. 688, 798 S.E.2d 610 (2017) (suspending for thirty days for failing to timely file habeas petition and lack of communication with client); *Lawyer Disciplinary Bd. v. Sturm*, 237 W.Va. 115, 785 S.E.2d 821 (2016) (suspending attorney for ninety days for failure to file habeas petition, failure to communicate, and irregularities in depositing and making a timely refund of retainer); *Lawyer Disciplinary Board v. Conner*, 234 W.Va. 648, 769 S.E.2d 25 (2015) (suspending lawyer ninety days for neglectful behavior, failure to communicate, lack of performance of legal services, improper deposit of retainer fee, failure to appear before Supreme Court of Appeals, and lack of compliance with ODC requests); *Committee on Legal Ethics v. Karl*, 192 W.Va. 23, 449 S.E.2d 277

17

(1994) (suspending lawyer for ninety days for lack of appropriate diligence and communication with client and disciplinary panel).

By sanctioning Mr. Munoz less harshly than recommended by the HPS, we do not diminish the severity of his conduct in any manner. We find clear and convincing evidence to support the HPS's factual finding that he misrepresented the facts surrounding his requests for continuances in his DUI criminal case, despite his characterization of those matters as simply based upon court confusion, misinformation, or contradictory testimony of the prosecuting attorney and the magistrate. We find his behavior egregious and reprehensible. As succinctly stated in *Astles' Case*, 594 A.2d 167 (N.H. 1991), "[n]o single transgression reflects more negatively on the legal profession than a lie." *Id.* at 170. The honor of practicing law "does not come without the concomitant responsibilities of truth, candor and honesty. . . . [I]t can be said that the presence of these virtues in members of the bar comprises a large portion of the fulcrum upon which the scales of justice rest." *Jones' Case*, 628 A.2d 254, 259 (N.H. 1993) (quotation omitted). "Respect for our profession is diminished with every deceitful act of a lawyer." *Disciplinary Counsel v. Fowerbaugh*, 658 N.E.2d 237, 239 (Ohio 1995).

18

## IV. Conclusion

For the foregoing reasons, we impose the following sanctions: suspension of Mr. Munoz's law license for three months; compliance with the mandates of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure consequent to his suspension; automatic reinstatement following the suspension; completion of an additional six hours of continuing legal education during the current reporting period, including three hours in the area of ethics and office management and three hours in the representation of clients in petitions for writ of habeas corpus; and payment of costs of these proceedings.

Sanctions Ordered.