IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

_____

No. 20-0908
_____

**FILED**

**April 8, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LAWYER DISCIPLINARY BOARD,
Petitioner,

v.

LEAH PERRY MACIA,
A Member of the West Virginia State Bar,
Respondent.

_____

Lawyer Disciplinary Proceeding

LAW LICENSE SUSPENDED AND OTHER SANCTIONS IMPOSED

_____

Submitted: March 16, 2022
Filed: April 8, 2022

Rachael L. Fletcher Cipoletti, Esq.
Chief Lawyer Disciplinary Counsel
Office of Lawyer Disciplinary Counsel
Charleston, West Virginia
Counsel for Petitioner

Timothy L. Mayo, Esq.
Jeffrey M. Wakefield, Esq.
Flaherty Sensabaugh Bonasso PLLC
Charleston, West Virginia
Counsel for Respondent

JUSTICE ARMSTEAD delivered the Opinion of the Court.
JUSTICE MOATS, deeming himself disqualified, did not participate in the decision of this case.
JUDGE KIRKPATRICK, sitting by temporary assignment.
JUSTICE WOOTON and JUDGE KIRKPATRICK dissent and reserve the right to file dissenting Opinions.

SYLLABUS BY THE COURT

1.      "A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar [currently, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment.  On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record." Syl. Pt. 3, *Comm. on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

2.      "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Comm. on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

3.      "Where there has been a final criminal conviction, proof on the record of such conviction satisfies the Committee on Legal Ethics' burden of proving an ethical violation arising from such conviction." Syl. Pt. 2, *Comm. on Legal Ethics v. Six*, 181 W. Va. 52, 380 S.E.2d 219 (1989).

4.      "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an

i

effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syl. Pt. 7, in part, *Off. of Law. Disc. Coun. v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

5. "Rule 3.16 of the *West Virginia Rules of Lawyer Disciplinary Procedure* enumerates factors to be considered in imposing sanctions and provides as follows: 'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the [West Virginia Supreme Court of Appeals] or [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.'" Syl. Pt. 4, *Off. of Law. Disc. Coun. v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

6. "The general rule is that when a question has been definitively determined by this Court its decision is conclusive on parties, privies and courts, including this Court, upon a second appeal and it is regarded as the law of the case." Syl. Pt. 1, *Mullins v. Green*, 145 W. Va. 469, 115 S.E.2d 320 (1960).

7. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. Pt. 4, *Law. Disc. Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

8.     "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. Pt. 2, *Law. Disc. Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

9.     "Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses." Syl. Pt. 3, *Law. Disc. Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

ARMSTEAD, Justice:

This is a lawyer disciplinary proceeding brought against Leah Perry Macia ("Ms. Macia") by the Lawyer Disciplinary Board ("LDB"). The Office of Disciplinary Counsel ("ODC") and Ms. Macia entered an agreed stipulation providing that Ms. Macia violated three rules of professional conduct. The parties also stipulated to the recommended sanctions, which included that Ms. Macia's law license would be suspended for one year but that she would only serve ninety days of this suspension. The Hearing Panel Subcommittee ("HPS") recommended reducing the period of Ms. Macia's actual suspension from ninety days to thirty days. The HPS's report did not explain why it determined that the suspension should be reduced. The ODC filed an objection to the HPS's report, arguing that the agreed upon ninety-day suspension should be imposed.

Upon review, we agree with the ODC and order that Ms. Macia serve an actual suspension of ninety days.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ms. Macia is a lawyer practicing in Charleston, West Virginia. She was admitted to the West Virginia State Bar in 1998. As such, Ms. Macia is subject to the disciplinary jurisdiction of this Court.

This Court addressed the misconduct giving rise to this lawyer disciplinary proceeding in *State v. McClanahan*, No. 19-0944, 2020 WL 7231111 (W. Va. Dec. 7, 2020) (memorandum decision) ("*McClanahan*"). Ms. Macia, a public defender, appeared in circuit court at a sentencing hearing on behalf of her client, Mr. McClanahan, who pled

1

guilty to the felony offense of burglary. Ms. Macia requested that the circuit court impose probation so that Mr. McClanahan could receive inpatient treatment at Prestera Treatment Center. When pressed by the circuit court on whether "a guaranteed bed" was reserved for her client at Prestera, Ms. Macia responded: "Yes, it is, your Honor." Based on Ms. Macia's assurance that Mr. McClanahan had "a guaranteed bed," the circuit court suspended Mr. McClanahan's prison sentence and placed him on probation.

Approximately one hour after the sentencing hearing, the circuit court's probation officer learned that Mr. McClanahan did not have "a guaranteed bed" at Prestera. After making inquiries, the probation officer concluded that Prestera had not received a referral from Ms. Macia. Upon learning this information, the circuit court revoked Mr. McClanahan's probation and reinstated the penitentiary sentence. Further, the court directed Ms. Macia to appear and show cause why she should not be held in criminal contempt.

During the hearing on the criminal contempt charge, the State presented the testimony of several Prestera employees, establishing that Ms. Macia had not spoken to anyone on the Prestera staff before assuring the circuit court that Mr. McClanahan had a "guaranteed bed." Ms. Macia testified on her own behalf and stated that Mr. McClanahan raised the issue of rehabilitation immediately prior to the sentencing hearing and that she relied on his representation that his mother had arranged for treatment. Ms. Macia also testified that she called Prestera and was assured that Mr. McClanahan could enter the program.

2

The circuit court found Ms. Macia in direct criminal contempt for stating that there was a "guaranteed bed" at Prestera. Further, it found "Ms. Macia's representations 'reckless and irresponsible' and found that they threatened to obstruct justice. The court assessed a contempt fee of $50.00 and directed the circuit clerk to transmit the transcripts of the contempt hearing and other relevant hearings to the Lawyer Disciplinary Board." *McClanahan*, 2020 WL 7231111, at *1. Ms. Macia appealed the circuit court's order, arguing that there was insufficient evidence that she intentionally misled the circuit court.[1] This Court rejected Ms. Macia's argument and affirmed the circuit court's ruling in *McClanahan*.

Formal disciplinary charges were filed against Ms. Macia in November of 2020. In May of 2021, the ODC and Ms. Macia stipulated to the facts underlying her misconduct and stipulated that she violated the following West Virginia Rules of Professional Conduct: 1) knowingly making a false statement to a tribunal, in violation of Rule 3.3(a)(1);[2] 2) committing a criminal act that reflects adversely on the lawyer's

---

[1] Ms. Macia also argued that 1) the circuit court's findings were insufficient to support a contempt finding; 2) the circuit court erred by excluding notes she made around the time of the sentencing hearing; and 3) the circuit court erred in excluding a letter showing that Mr. McClanahan had been accepted into a different treatment program.

[2] Rule 3.3(a) of the West Virginia Rules of Professional Conduct provides:
(a) A lawyer shall not knowingly:
(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]

honesty, trustworthiness, or fitness, in violation of Rule 8.4(b);[3] and 3) engaging in conduct prejudicial to the administration of justice, in violation of Rule 8.4(d).[4] Ms. Macia and the ODC also agreed on the recommended sanctions, including that her license to practice law would be suspended for one year and that she would serve ninety days of the one-year suspension.[5]

The HPS filed its report in October of 2021. The HPS noted the stipulations regarding the misconduct and rule violations agreed upon by Ms. Macia and the ODC. Further, the HPS found that 1) Ms. Macia's conduct violated duties she owed to her client, the public, and the legal system; 2) Ms. Macia "knowingly misrepresented information to the [circuit court] to the detriment of her client; and 3) Ms. Macia's "misconduct resulted in the waste of judicial resources, the diminished confidence in the administration of justice, and damage to the public's confidence in lawyers." The HPS agreed with the stipulated sanctions with one caveat—it recommended reducing the period of Ms. Macia's

---

[3] Rule 8.4(b) provides: "It is professional misconduct for a lawyer to: (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[.]"

[4] Rule 8.4(d) provides: "It is professional misconduct for a lawyer to: (d) Engage in conduct that is prejudicial to the administration of justice."

[5] The additional sanctions are as follows: Ms. Macia will issue a written apology to the Circuit Court Judge for her misconduct; at the conclusion of the ninety days of suspension, assuming that Ms. Macia satisfies all conditions to return to practice, Ms. Macia will be subject to automatic reinstatement, and the remaining period of suspension will be held in abeyance while she is on probation with supervised practice by an experienced lawyer for a period of one year; any breach of the terms of probation will result in the filing of a petition with this Court; and Ms. Macia will pay the costs of the disciplinary proceeding.

actual suspension from ninety days to thirty days. The HPS did not explain why it determined that the actual suspension should be reduced to thirty days.

The ODC filed an objection to the HPS's report, arguing that Ms. Macia's actual suspension should be ninety days.

## II. STANDARD OF REVIEW

In syllabus point three of *Committee on Legal Ethics v. McCorkle*, 192 W. Va. 286, 289, 452 S.E.2d 377, 380 (1994), this Court held:

> A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar [currently, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

This standard is consistent with this Court's ultimate authority regarding legal ethics matters: "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Comm. on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

Rule 3.7 of the West Virginia Rules of Lawyer Disciplinary Procedure provides that, in order to recommend the imposition of discipline of a lawyer, "the allegations of the formal charge must be proved by clear and convincing evidence." *See*

5

*also* Syl. Pt. 2, *Law. Disc. Bd. v. Cunningham*, 195 W. Va. 27, 464 S.E.2d 181 (1995). The various sanctions which may be recommended to this Court are set forth in Rule 3.15 of the West Virginia Rules of Lawyer Disciplinary Procedure. It states:

> A Hearing Panel Subcommittee may recommend or the Supreme Court of Appeals may impose any one or more of the following sanctions for a violation of the *Rules of Professional Conduct* . . . (1) probation; (2) restitution; (3) limitation on the nature or extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment. When a sanction is imposed the Hearing Panel Subcommittee may recommend and the Court may order the lawyer to reimburse the Lawyer Disciplinary Board for the costs of the proceeding. Willful failure to reimburse the Board may be punished as contempt of the Court.

In devising suitable sanctions for attorney misconduct, we have recognized that "[a]ttorney disciplinary proceedings are not designed solely to punish the attorney, but rather to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice." *Law. Disc. Bd. v. Taylor*, 192 W. Va. 139, 144, 451 S.E.2d 440, 445 (1994).

### III. ANALYSIS

The parties' dispute in this matter is whether Ms. Macia's actual suspension should be for ninety days or thirty days. The ODC argues that a ninety-day suspension is appropriate because Ms. Macia's criminal contempt conviction is a serious offense that reflects adversely on a lawyer's honesty, trustworthiness, or fitness. According to the ODC, a ninety-day suspension is proper in light of the severity of Ms. Macia's offense and is consistent with other lawyer disciplinary cases involving dishonesty.

6

Conversely, Ms. Macia argues that the HPS considered all of the relevant information and properly found that thirty days was an appropriate sanction. Ms. Macia asserts that this Court should give "respectful consideration" to the HPS's recommendation and notes that a number of mitigating factors are present.

Upon review, we agree with the ODC. The ODC is required "to prove the allegations of the formal charge by clear and convincing evidence." Syl. Pt 1, in part, *Law. Disc. Bd. v. McGraw*, 194 W. Va. 788, 461 S.E.2d 850 (1995). Ms. Macia was convicted of criminal contempt and her conviction was affirmed by this Court. "Where there has been a final criminal conviction, proof on the record of such conviction satisfies the Committee on Legal Ethics' burden of proving an ethical violation arising from such conviction." Syl. Pt. 2, *Comm. on Legal Ethics v. Six*, 181 W. Va. 52, 380 S.E.2d 219 (1989). Further, Ms. Macia stipulated to her misconduct that gave rise to the criminal contempt and stipulated that this conduct violated three rules of professional conduct. Therefore, we proceed to consider the recommended sanctions.

Sanctions in a lawyer disciplinary case must be designed to "serve as a deterrent to other attorneys." *McCorkle*, 192 W. Va. at 291, 452 S.E.2d at 382. In syllabus point seven of *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998), this Court held:

> "'In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the

7

legal profession.' Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987)." Syl. Pt. 5, *Committee on Legal Ethics v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989).

Additionally, we are guided by the well-settled principle that:

Rule 3.16 of the *West Virginia Rules of Lawyer Disciplinary Procedure* enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the [West Virginia Supreme Court of Appeals] or [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syl. Pt. 4, *Jordan*. We now consider the four Rule 3.16 factors.

**1. Duties Owed to Clients, the Public, the Legal System, or the Profession**

Ms. Macia's conduct clearly violated duties to the legal system and the legal profession. As Ms. Macia and the ODC noted in their agreed upon stipulation, "[l]awyers owe a fundamental obligation of truth to the legal system. The evidence establishes by clear and convincing proof that [Ms. Macia] has violated duties owed to the legal system and the legal profession." Additionally, Ms. Macia's conduct also potentially harmed her client who was initially granted probation only to have that probation revoked after her misrepresentation was discovered.

**2. Whether the Lawyer Acted Intentionally, Knowingly, or Negligently**

8

Ms. Macia argued in *McClanahan* that her conduct was not intentional. This Court rejected her argument. We have held that "[t]he general rule is that when a question has been definitively determined by this Court its decision is conclusive on parties, privies and courts, including this Court, upon a second appeal and it is regarded as the law of the case." Syl. Pt. 1, *Mullins v. Green*, 145 W. Va. 469, 115 S.E.2d 320 (1960). Additionally, the agreed upon stipulation between Ms. Macia and the ODC provides, "[t]he Circuit Court specifically found that [Ms. Macia's] statements were reckless and irresponsible. The Supreme Court in affirming the contempt conviction found that she acted intentionally." Therefore, we conclude that Ms. Macia acted intentionally.

### 3. The Amount of Real or Potential Injury

Third, we examine the amount of real or potential injury. The parties' stipulation provided that Ms. Macia's "misconduct resulted in the waste of judicial resources, the diminished confidence in the administration of justice, and damage to the public's confidence in lawyers." We agree. As this Court noted in *McClanahan*:

> Ms. Macia, an attorney, is an officer of the court. . . . When an officer of the court is "disrespectful to the degree that it constitutes an imminent threat to the administration of justice . . . summary punishment for contempt will be authorized." Syl. Pt. 2, in part, *State v. Boyd*, 166 W. Va. 690, 276 S.E.2d 829 (1981). Ms. Macia's baseless assurance that treatment was available to Mr. McClanahan was made at the sentencing hearing to obtain a favorable outcome. Without Ms. Macia's confident assurance the circuit court would not have ordered the immediate suspension of Mr. McClanahan's penitentiary sentence. These facts evince an imminent threat of interruption to the administration of justice.

2020 WL 7231111, at *2.

9

**4. Aggravating or Mitigating Factors**

We next consider whether any aggravating or mitigating factors are present. This Court has held that "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. Pt 4, *Law. Disc. Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

The parties stipulated, and the HPS agreed, that the following aggravating factors are present: 1) substantial experience in the practice of law;[6] and 2) Ms. Macia's criminal contempt conviction. The parties agreed that the criminal contempt conviction "should not be equated to a felony but is more similarly aligned to a misdemeanor offense." We concur with the parties, and the HPS, and find that these two aggravating factors are present.

We next consider mitigating factors. This Court has held that "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." *Id.*, Syl. Pt. 2. In syllabus point three of *Scott*, we explained:

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a

---

[6] Substantial experience is deemed to be an aggravating factor, while lack of experience as a lawyer is considered to be a mitigating factor. This distinction is made in recognition of the fact that "a youthful and inexperienced attorney may have [engaged in misconduct] as a result of inexperience rather than as a result of deliberate calculation." *In re Brown*, 166 W. Va. 226, 235, 273 S.E.2d 567, 572 (1980). Ms. Leah was admitted to the practice of law in West Virginia in 1998. Thus, she had substantial experience as a lawyer and the HPS correctly found this to be an aggravating factor.

10

dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

The parties stipulated, and the HPS agreed, that the following mitigating factors are present: 1) absence of a prior disciplinary record; 2) acceptance of responsibility and cooperative attitude with the ODC during the disciplinary proceedings; 3) evidence of good character and reputation; 4) imposition of other penalties or sanction; and 5) remorse. We concur with the parties, and the HPS, and find that these five mitigating factors are present.

When weighing all of these factors, we agree with the ODC that Ms. Macia should serve a ninety-day suspension. Ms. Macia was convicted of criminal contempt. In *McClanahan*, this Court determined that her misconduct, which involved dishonesty, demonstrated "an imminent threat of interruption to the administration of justice." 2020 WL 7231111, at *2. This Court has recognized that "[h]onesty is one of the cornerstones of the legal profession." *Office of Law. Disc. Coun. v. Galford*, 202 W. Va. 587, 590, 505 S.E.2d 650, 653 (1998). Similarly, we have observed that

> "[n]o single transgression reflects more negatively on the legal profession than a lie." [*Astles' Case*, 134 N.H. 602, 594 A.2d 167, 170 (1991)]. The honor of practicing law "does not come without the concomitant responsibilities of truth, candor[,] and honesty . . . [I]t can be said that the presence of these virtues in members of the bar comprises a large portion of the fulcrum

11

> upon which the scales of justice rest." *Jones' Case*, 137 N.H. 351, 628 A.2d 254, 259 (1993) (quotation omitted). "Respect for our profession is diminished with every deceitful act of a lawyer." *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St. 3d 187, 658 N.E.2d 237, 239 (1995).

*Law. Disc. Bd. v. Munoz*, 240 W. Va. 42, 51, 807 S.E.2d 290, 299 (2017).

This Court recently imposed a ninety-day suspension in a lawyer disciplinary matter involving a lawyer's dishonesty. In *Lawyer Disciplinary Board v. Curnutte*, 243 W. Va. 617, 849 S.E.2d 617 (2020), a lawyer provided false information about his professional liability insurance coverage to the State Bar. The lawyer also lied about having such coverage to a lawyer he employed, causing that lawyer to provide false information to the State Bar. As in the instant case, multiple mitigating factors were present.[7] The Court in *Curnutte* balanced these mitigating factors with the lawyer's misconduct. After examining a number of previous cases involving dishonesty,[8] the Court determined that a ninety-day suspension was an appropriate sanction.

---

[7] The mitigating factors in *Curnutte* were 1) lack of a prior disciplinary record; 2) full and free disclosure to the HPS and a cooperative attitude toward the disciplinary proceeding; 3) a good faith effort to rectify the consequences of the misconduct; and 4) remorse. 243 W. Va. at 625, 849 S.E.2d at 625.

[8] The Court in *Curnutte* recognized the following disciplinary cases involving dishonesty:

> *See Lawyer Disc. Bd. v. Losch*, 219 W. Va. 316, 633 S.E.2d 261 (imposing reprimand, and other sanctions, for violation of Rules 8.4(c) and 8.4(d) by altering document after it was signed by circuit court and causing it to be served on an individual); *Lawyer Disc. Bd. v. Ansell*, 210 W. Va. 139, 556 S.E.2d 106 (2001) (per curiam) (suspending lawyer for sixty days, along with

(continued . . .)

In the present case, we find that a ninety-day suspension will accomplish the goals of our disciplinary system by punishing Ms. Macia, and serving as a deterrent to other members of the bar. Further, a ninety-day suspension is consistent with the sanction we imposed in *Curnette* in which the Court balanced a lawyer's dishonest conduct with a number of mitigating factors. In imposing this sanction, we emphasize that the HPS did not offer any explanation demonstrating why it recommended departing from the agreed upon ninety-day suspension. We also emphasize that the ODC and Ms. Macia's "joint recommendation as to discipline" included that she serve a ninety-day suspension. In light of the gravity of Ms. Macia's conduct, notwithstanding the HPS's recommendation as to the sanction, we agree with the parties' joint recommendation as to the appropriate sanction and find that a ninety-day suspension is proper.

---

other sanctions, for attempting to obtain legitimately earned payment from the Public Defender's Services for two court-appointed criminal cases by altering a circuit court order from another court-appointed case); *Office of Disc. Counsel v. Galford*, 202 W. Va. 587, 505 S.E.2d 650 (1998) (per curiam) (ordering one-year suspension, and other sanctions, after lawyer forged a will following a testator's death to include an heir mistakenly omitted from original will lawyer prepared; lawyer also was criminally prosecuted and entered a nolo contendere plea); *Comm. on Legal Ethics v. Taylor*, 190 W. Va. 133, 437 S.E.2d 443 (1993) (per curiam) (adopting recommendation of two consecutive six-month suspensions, with other sanctions, for practicing law as an Assistant Public Defender while law license suspended for Mandatory Continuing Legal Education deficiencies, and for writing a check on an account with knowledge that it lacked sufficient funds and then failing to make restitution when the incident was brought to light).

243 W. Va. at 626, 849 S.E.2d at 626 (footnote omitted).

# IV. CONCLUSION

Ms. Macia's license to practice law is suspended for one year and she must serve ninety days of this suspension. We adopt the additional sanctions recommended by the HPS: Ms. Macia will issue a written apology to the Circuit Court Judge for her misconduct; at the conclusion of the ninety day suspension, assuming that Ms. Macia satisfies all conditions to return to practice, Ms. Macia will be subject to automatic reinstatement, and the remaining period of suspension will be held in abeyance while she is on probation with supervised practice by an experienced lawyer for a period of one year; any breach of the terms of probation will result in the filing of a petition with this Court; and Ms. Macia will pay the costs of the disciplinary proceeding.

Law License Suspended and Other Sanctions Imposed.