505 S.E.2d 650

OFFICE OF LAWYER DISCIPLINARY COUNSEL, Petitioner,

v.

Randall W. GALFORD, an Inactive Member of The West Virginia State Bar, Respondent.

No. 23930.

Supreme Court of Appeals of West Virginia.

Submitted June 9, 1998.

Decided June 18, 1998.

588

Steven Johnston Knopp, Lawyer Disciplinary Counsel, Charleston, for Petitioner.

Cynthia S. Gustke, Elkins, for Respondent.

PER CURIAM:[1]

This lawyer disciplinary proceeding was previously remanded by this Court's order of March 12, 1997, to the Lawyer Disciplinary Board (hereinafter Board) for a mitigation hearing. The Board has filed its decision in this matter recommending that the following sanctions be implemented against attorney Randall W. Galford: (1) Mr. Galford's license to practice law be suspended for one year, (2) that after the suspension Mr. Galford be automatically readmitted to the Bar, (3) that Mr. Galford's legal practice be supervised for one year upon readmittance to the Bar, (4) that he refrain from alcohol or drug use during the suspension and period of supervision, and (5) that he pay the costs of all proceedings in this matter. Neither Mr. Galford nor the Office of Disciplinary Counsel (hereinafter ODC) oppose the Board's recommendations.

I.

### FACTUAL BACKGROUND

In 1991, Mr. Galford prepared a will for an elderly client named Opal Susan Bragg. The will was to have made Ms. Bragg's cousin, Carl Bailey, the executor and principal bene-

---

**1.** We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992).

ficiary. Mr. Bailey knew that it was intended that he inherit the bulk of Ms. Bragg's estate. In 1994, Ms. Bragg died. Shortly thereafter Mr. Bailey had the will probated. At that time Mr. Bailey learned that Ms. Bragg's will appointed him as executor; but, did not leave him any inheritance. Mr. Bailey confronted Mr. Galford about the will. Mr. Galford acknowledged that an error occurred at his office. Mr. Galford acknowledged that Mr. Bailey's name should have appeared in the will as principal beneficiary. Mr. Galford informed Mr. Bailey that he could initiate a malpractice action against him. Alternatively, Mr. Galford proposed to create a new will naming Mr. Bailey as the principal beneficiary. Mr. Bailey did not immediately agree to take either course of action proposed by Mr. Galford. Instead, Mr. Bailey contacted local authorities regarding the proposal. Subsequently, on March 22, 1994, Mr. Bailey went to Mr. Galford's office. At the meeting, Mr. Bailey was wearing a body transmitter and recording device that was placed on him by the state police. Mr. Galford prepared a new will at the meeting. The will was backdated prior to the death of Ms. Bragg. Ms. Bragg's signature was forged on the will. Mr. Galford instructed his secretary to accompany Mr. Bailey to the county clerk's office to surreptitiously file the new will.

On January 9, 1996, a Nicholas County grand jury returned a two count felony indictment against Mr. Galford and members of his office. The indictment charged Mr. Galford with forgery and uttering a writing in violation of W.Va.Code § 61–4–5 and § 61–10–31. On November 18, 1996, Mr. Galford entered a plea of nolo contendere to a charge of conspiracy to commit a misdemeanor, which was a lesser included charge in the felony counts. On January 9, 1997, the circuit court sentenced Mr. Galford to one year in jail and a fine of $1,000.00. The sentence was suspended. Mr. Galford was placed on probation for thirty six months under the following terms: (1) perform 1,000 hours of community service, (2) attend an alcohol treatment program and (3) spend thirty days in jail.

On December 31, 1996, prior to Mr. Galford's sentencing hearing a petition to suspend or annul his license was filed with this Court by the ODC. The petition charged Mr. Galford with having been convicted of a crime that reflected adversely on his honesty, trustworthiness or fitness as a lawyer in violation of Rule 8.4(b) of the Rules of Professional Conduct.[2] On March 12, 1997, this Court remanded the case to the Board for a mitigation hearing pursuant to Rule 3.18(f) of the Rules of Lawyer Disciplinary Procedure. A mitigation hearing was held. This matter is now before the Court based upon the recommendations of the Board.

## II.

### STANDARD OF REVIEW

This Court has held the following with regard to judicial review of lawyer disciplinary proceedings:

A de novo standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this court gives respectful consideration to the [Board's] recommendation while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. pt. 3, *Committee on Legal Ethics v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994). We have also held that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. pt. 3, *Committee on Legal Ethics v. Blair,* 174 W.Va. 494, 327 S.E.2d 671 (1984). "In deciding on the appropriate disciplinary action for ethical violations, this Court must

---

**2.** Rule 8.4(b) provides:

It is professional misconduct for a lawyer to:

(b) commit a criminal act that reflects adversely upon the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.

consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syl. pt. 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987).

## III.

## DISCUSSION

▮▮▮ The issue of Mr. Galford's violation of Rule 8.4(b) is not before this Court. We indicated in syllabus point 2 of *Committee on Legal Ethics of the West Virginia State Bar v. Six*, 181 W.Va. 52, 380 S.E.2d 219 (1989) that "[w]here there has been a final criminal conviction, proof on the record of such conviction satisfies the [Office of Disciplinary Counsel's] burden of proving an ethical violation arising from such conviction." We remanded this matter to the Board for the purpose of conducting a mitigation hearing to determine whether Mr. Galford's license to practice law should be suspended or annulled as a result of his conviction. "The purpose of a mitigation hearing, in appropriate cases, is to provide this Court with the opportunity to obtain evidence in addition to that already contained in the record and to review facts which might mitigate in favor of an attorney." *Committee on Legal Ethics v. Folio*, 184 W.Va. 503, 507, 401 S.E.2d 248, 252 (1990). "We endeavor to make an individualized assessment of the sanction rather than follow a punishment schedule." *Lawyer Disciplinary Bd. v. Cunningham*, 195 W.Va. 27, 36, 464 S.E.2d 181, 190 (1995).

The Board "considered the reasons that Mr. Galford gave for his conduct, including his personal problems concerning his divorce and his drinking problem." The Board considered those factors insufficient "to adopt what Mr. Galford's counsel has suggested as far as discipline, that being basically a suspension equal to the time that Mr. Galford voluntarily placed himself on inactive status which was approximately nine months." The Board reasoned that Mr. Galford's conduct "was serious and intentional, and although his motives were not directly economic, they were self-serving in that it protected him from a potential malpractice action as well as possible calumny within his community with regard to his reputation for skillfulness and competency as an attorney." In view of all the evidence presented at the mitigation hearing the Board concluded and recommended (1) that Mr. Galford's license to practice law be suspended for one year, (2) that after the suspension Mr. Galford be automatically readmitted to the Bar, (3) that his legal practice be supervised for one year upon readmittance to the Bar, (4) that he refrain from alcohol or drug use during the suspension and period of supervision, and (5) that he pay the costs of all proceedings in this matter.

The conduct engaged in by Mr. Galford was extremely serious. Honesty is one of the cornerstones of the legal profession. While Mr. Galford may have plead to a misdemeanor, his conduct was a felonious assault on the integrity of our probate system and our legal system as a whole. This Court is not oblivious to the fact that personal problems can sometimes cloud the judgment of members of the bar. However, this Court will not permit personal problems to be utilized and excused to the point that our legal profession is destroyed in the eyes of the public.

The Board and ODC have considered many of this Court's unpublished memorandum opinions and found the recommended punishment to be consistent with past decisions. We agree with the Board that its recommended decision is appropriate in this case. We therefore adopt the Board's recommendation as the same is set out in this opinion and as is more fully set out in its recommended decision. However, we believe it is necessary to require Mr. Galford to reimburse all members of his law office for legal fees incurred directly as a result of this matter. Additionally, we believe it necessary to require Mr. Galford to reimburse Mr. Carl Bailey for legal fees, if any, which resulted directly from Mr. Galford's conduct.

## IV.

## CONCLUSION

This Court finds that Mr. Galford violated Rule 8.4(b) as a result of a criminal convic-

tion. We therefore order that Mr. Galford be sanctioned as outlined herein.

One year suspension, automatic readmission to the Bar, one year supervision upon readmittance, refrain from alcohol or drug use, payment of disciplinary costs, payment of legal fees of office staff, and reimbursement to Mr. Carl Bailey for legal fees, if any, which resulted directly from Mr. Galford's conduct.