# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

### September 2020 Term

_____

No. 19-0636

_____

**FILED**

**October 16, 2020**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## LAWYER DISCIPLINARY BOARD,
Petitioner

## V.

## SCOTT A. CURNUTTE,
Respondent

_____

Lawyer Disciplinary Proceeding
No. 18-01-033

## LAW LICENSE SUSPENDED AND OTHER SANCTIONS IMPOSED

_____

Submitted: September 22, 2020
Filed: October 16, 2020

Rachael L. Fletcher Cipoletti
Chief Lawyer Disciplinary Counsel
Andrea J. Hinerman
Senior Lawyer Disciplinary Counsel
Office of Lawyer Disciplinary Counsel
Charleston, West Virginia
Attorneys for the Petitioner

Scott A. Curnutte
Curnutte Law
Elkins, West Virginia
Self-Represented Litigant

**JUSTICE JENKINS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.     "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions[,] or annulments of attorneys' licenses to practice law."  Syllabus point 3, *Committee on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

2.     "A *de novo* standard applies to a review of the adjudicatory record made before the [Hearing Panel Subcommittee ('HPS') of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [HPS's] recommendations while ultimately exercising its own independent judgment.  On the other hand, substantial deference is given to the [HPS's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record."  Syllabus point 3, *Committee on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

3.     "[W]here the parties enter into stipulations of fact, the facts so stipulated will be considered to have been proven as if the party bearing the burden of proof has produced clear and convincing evidence to prove the facts so stipulated."  Syllabus point 4, in part, *Matter of Starcher*, 202 W. Va. 55, 501 S.E.2d 772 (1998).

4.	"Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: 'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.'"  Syllabus point 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

5.	"Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed."  Syllabus point 4, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

6.	"Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed."  Syllabus point 2, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

7.	"Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses." Syllabus point 3, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

8.	"'''"In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.' Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987)." Syllabus Point 5, *Committee on Legal Ethics v. Roark*, 181 W. Va. 260, 382 S.E.2d 313 (1989).' Syllabus Point 2, *Committee on Legal Ethics v. White*, 189 W. Va. 135, 428 S.E.2d 556 (1993)." Syllabus point 4, *Committee on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

**Jenkins, Justice:**

This lawyer disciplinary proceeding originated with a "Statement of Charges" by the Lawyer Disciplinary Board ("LDB") against Scott A. Curnutte ("Mr. Curnutte") alleging that he violated the West Virginia Rules of Professional Conduct by providing false information about his professional liability insurance coverage to the West Virginia State Bar ("State Bar"). For three consecutive fiscal years, Mr. Curnutte submitted his annual Financial Responsibility Disclosure ("FRD") falsely certifying that he was covered under a policy of professional liability insurance, when, in fact, he had no such coverage. He also lied about having such coverage to a lawyer he employed, causing that lawyer to similarly provide false information to the State Bar.

The Hearing Panel Subcommittee ("HPS") of the LDB has concluded, and Mr. Curnutte and the Office of Lawyer Disciplinary Counsel ("ODC") have stipulated, that Mr. Curnutte's dishonesty violated the Rules of Professional Conduct. The HPS recommends that this Court suspend Mr. Curnutte's license to practice law for one-hundred days. In addition, the HPS recommends that Mr. Curnutte be required to complete an additional six hours of Continuing Legal Education in ethics; to comply with the duties of suspended lawyers set out in Rule 3.28 of the West Virginia Rules of Lawyer Disciplinary Procedure ("RLDP"); to reimburse the costs of these proceedings; and to fully and accurately disclose to the LDB what efforts, if any, he has made to procure professional liability insurance. After a careful review of the record developed in this disciplinary proceeding, and upon a thorough consideration of the parties' briefs, their oral arguments,

1

and the relevant law, we conclude that Mr. Curnutte has twice violated a Rule of Professional Conduct as alleged. However, we determine that a ninety-day suspension with automatic reinstatement pursuant to RLDP 3.31, along with the other recommended sanctions modified to comport with automatic reinstatement, provides an adequate sanction for Mr. Curnutte's misconduct.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Curnutte is a lawyer practicing in Elkins, West Virginia. Having passed the bar exam, he was admitted to the West Virginia State Bar on September 23, 1991; therefore, he is subject to the disciplinary jurisdiction of this Court and its properly constituted LDB.

Article III(A), Section 2, of the State Bar By-Laws that were in effect at the time relevant to these proceedings,[1] required every active lawyer engaged in the private

---

[1] By order entered on December 30, 2019, this Court approved and adopted revisions to the governance documents of the State Bar. Former Article III(A), Section 2, of the State Bar By-Laws was replaced with the following provision:

> **Bylaw 4.01. Required annual disclosure.** Upon admission to the Practice of Law in West Virginia, and with each subsequent annual membership payment, each active member of the State Bar is required to disclose information about the member's financial responsibility for professional liability claims. Failure to provide the disclosure in the manner set forth in State Bar Administrative Rule 4 will result in

practice of law to disclose whether he or she was covered by professional liability insurance, and, if not covered, whether the lawyer had another form of adequate financial responsibility:

### § 2. Disclosure.

Every active lawyer shall disclose to the West Virginia State Bar on or before September 1 of each year: (1) whether the lawyer is engaged in the private practice of law; (2) if so engaged, whether the lawyer is currently covered by professional liability insurance with limits of not less than $100,000 per claim and $300,000 policy aggregate covering generally insurable acts, errors and omissions occurring in the practice of law, other than an extended reporting endorsement; (3) if the lawyer is so engaged and not covered by professional liability insurance in the above minimum amounts, whether the lawyer has another form of adequate financial responsibility which means funds, in an amount not less than $100,000, available to satisfy any liability of the lawyer arising from acts or omissions by the lawyer or other persons employed or otherwise retained by the lawyer and that these funds shall be available in the form of a deposit in a financial institution of cash, bank certificate of deposit or United States Treasury obligation, a bank letter of credit or a surety or insurance company bond and describing same with reasonable particularity; (4) whether there is any unsatisfied final judgment(s) after appeal against either the lawyer, or any firm or any professional corporation in which the lawyer has practiced, for acts, errors or omissions, including, but not limited to, acts of dishonesty, fraud or intentional wrongdoing, arising out of the performance of legal services by the lawyer, including the date, amount and court where the judgment(s) was rendered; and (5) whether the lawyer is exempt from the provisions of this Rule because the lawyer is engaged in the practice of law as a full-time government lawyer or in-house counsel and does not represent clients outside that capacity. It

penalties and subject the member to possible suspension as set forth in Rule 4.

W. Va. State Bar By-Laws, art. 4.

is the duty of every active lawyer to report any changes which occur.

W. Va. State Bar By-Laws, art. III(A), § 2.  The State Bar By-Laws further required that "[t]he foregoing shall be certified by each active lawyer admitted to practice law in West Virginia on the State Bar's Active Membership Fee Notice and shall be made available to the public by such means as may be designated by the West Virginia State Bar."  W. Va. State Bar By-Laws, art. III(A), § 3.

For three consecutive fiscal years, 2015-2016, 2016-2017, and 2017-2018, Mr. Curnutte certified to the State Bar on his FRD that he and his law firm, Curnutte Law, were insured under a professional liability policy issued by ALPS.  Contrary to his disclosure, his ALPS policy had lapsed in March 2014.  When reporting for fiscal years 2015-2016 and 2016-2017, the policy number of Mr. Curnutte's ALPS policy appeared on his electronic FRD form without him having to input the number.  He submitted the form falsely certifying that the policy was still in effect.  For fiscal year 2017-2018, no policy number appeared on the electronic FRD form, so Mr. Curnutte entered a fictitious policy number and submitted the form falsely certifying he had professional liability insurance.  In addition, Mr. Curnutte hired a lawyer to work for his firm sometime in or around 2015.[2] When that lawyer requested policy information to complete her own FRD form, Mr.

---

[2] Mr. Curnutte had become a solo practitioner in or about 2014 after two attorney employees left his firm.

4

Curnutte provided her with false information. He stated that he "pulled up [his] own information on the [State Bar website] and then just read it off to her."

Formal charges against Mr. Curnutte were filed in this Court in July 2019. Because Mr. Curnutte, for three consecutive fiscal years, certified to the State Bar on his FRD that he was covered by professional liability insurance when he knew that this information was false, the LDB charged him with violating Rule 8.4(c) of the West Virginia Rules of Professional Conduct.[3] He was charged with a second violation of Rule 8.4(c) for providing false information about professional liability insurance coverage to his lawyer employee. He timely filed his answer to the statement of charges in August 2019, and an evidentiary hearing was held on October 22, 2019. On that same day, Mr. Curnutte, who was self-represented, and the ODC stipulated to the facts relating to his deceptive conduct, the fact that his conduct twice violated Rule 8.4(c), and the way in which his conduct satisfied the considerations of RLDP 3.16. They additionally stipulated that Mr. Curnutte knew it was a misrepresentation when he indicated on his electronic FRD that he had professional liability insurance coverage, and, further, that when he provided insurance information to his lawyer employee for purposes of her FRD, he knew the information was false.

---

[3] West Virginia Rule of Professional Conduct 8.4(c) provides, in relevant part, that "[i]t is professional misconduct for a lawyer to: . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

The HPS filed its report on February 13, 2020, wherein it found that the evidence presented established that Mr. Curnutte committed two violations of Rule 8.4(c) of the Rules of Professional Conduct.  The HPS recommends the following sanctions:

A.    That Respondent's law license be suspended for one hundred (100) days;

B.    That prior to filing a petition for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure, Respondent must complete an additional six (6) hours of [Continuing Legal Education] in ethics;

C.    That Respondent must comply with the mandates of Rule 3.28[4] of the Rules of Lawyer Disciplinary Procedure; and

---

[4] RLDP 3.28 sets out the duties of disbarred or suspended lawyers and provides that

(a) A disbarred or suspended lawyer shall promptly notify by registered or certified mail, return receipt requested, or by first-class mail with the prior consent of the Office of Disciplinary Counsel, all clients being represented in pending matters, other than litigated or administrative matters or proceedings pending in any court [or] agency, of the lawyer's inability to act as a lawyer after the effective date of disbarment or suspension and shall advise said clients to seek legal advice elsewhere.  Failure of a disbarred or suspended lawyer to notify all clients of his or her inability to act as a lawyer shall constitute an aggravating factor in any subsequent disciplinary proceeding.

(b) A disbarred or suspended lawyer shall promptly notify by registered or certified mail, return receipt requested, or by first-class mail with the prior consent of the Office of Disciplinary Counsel, each of the lawyer's clients who is involved in litigated or administrative matters or proceedings pending, of the lawyer's inability to act as a lawyer after the effective date of disbarment or suspension and shall advise said client to promptly substitute another lawyer in his or her place. In the event the client does not obtain substitute counsel before

6

D.      That prior to filing a petition for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure, Respondent must reimburse the costs of these proceedings pursuant to Rule 3.15[5] of the Rules of Lawyer Disciplinary Procedure; and

---

the effective date of the disbarment or suspension, it shall be the responsibility of the disbarred or suspended lawyer to move pro se in the court or agency in which the proceeding is pending for leave to withdraw as counsel.  The notice to be given to the lawyer for any adverse party shall state the place of residence of the client of the disbarred or suspended lawyer.

(c) The disbarred or suspended lawyer, after entry of the disbarment or suspension order, shall not accept any new retainer or engage as attorney for another in any new case or legal matter of any nature.  During the period from the entry date of the order to its effective date, however, the lawyer may wind up and complete, on behalf of any client, all matters which were pending on the entry date.  Within twenty days after the effective date of the disbarment or suspension order, the lawyer shall file under seal with the Supreme Court of Appeals an affidavit showing (1) the names of each client being represented in pending matters who were notified pursuant to subsections (a) and (b); (2) a copy of each letter of notification which was sent; (3) a list of fees and expenses paid by each client and whether escrowed funds have been or need to be reimbursed; and (4) an accounting of all trust money held by the lawyer on the date the disbarment or suspension order was issued.  Such affidavit shall also set forth the residence or other address of the disbarred or suspended lawyer where communications may thereafter be directed and a list of all other courts and jurisdictions in which the disbarred or suspended lawyer is admitted to practice.  A copy of this report shall also be filed with the Office of Disciplinary Counsel.

[5] The relevant portion of RLDP 3.15 provides that,

[w]hen a sanction is imposed, the Hearing Panel Subcommittee or the Court shall order the lawyer to reimburse the Lawyer Disciplinary Board for the costs of the disciplinary proceeding unless the panel or the Court finds the reimbursement will pose

7

E.  That at the time of filing a petition for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure, Respondent shall fully and accurately disclose to the Lawyer Disciplinary Board what efforts, if any, he has made to procure professional liability insurance.

The LDB argues in favor of this Court adopting the recommendations of the HPS. Mr. Curnutte appears to advocate a less severe sanction; although, he does not suggest what sanction he believes would be appropriate.

## II.

## STANDARD OF REVIEW

While we receive recommendations from the HPS in lawyer disciplinary matters, it is well established that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions[,] or annulments of attorneys' licenses to practice law." Syl. pt. 3, *Comm. on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984). Accordingly, our review is plenary:

> A *de novo* standard applies to a review of the adjudicatory record made before the [Hearing Panel Subcommittee ("HPS") of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [HPS's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [HPS's] findings of fact, unless such findings are not supported by

> an undue hardship on the lawyer. Willful failure to reimburse the Board may be punished as contempt of the Court.

8

reliable, probative, and substantial evidence on the whole record.

Syl. pt. 3, *Comm. on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

Applying these standards, we consider the merits of this disciplinary proceeding.

## III.

## DISCUSSION

As we noted above, the ODC and Mr. Curnutte have stipulated the facts of his misconduct and that his conduct violated Rule 8.4(c). This Court has recognized that, "where the parties enter into stipulations of fact, the facts so stipulated will be considered to have been proven as if the party bearing the burden of proof has produced clear and convincing evidence to prove the facts so stipulated." Syl. pt. 4, in part, *Matter of Starcher*, 202 W. Va. 55, 501 S.E.2d 772 (1998). For this reason, we direct our analysis to the appropriate sanctions to be imposed upon Mr. Curnutte.

Our consideration of the appropriate sanction is guided by our holding in Syllabus point 4 of *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998):

> Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal

9

system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Even though the parties have stipulated to the way Mr. Curnutte's misconduct satisfies the *Jordan*/Rule 3.16 factors, we nevertheless find it useful to examine each of these factors to assess the proper sanction for his misconduct.

Meeting the first *Jordan*/Rule 3.16 factor, the parties stipulated that Mr. Curnutte violated the duties he owed to his clients, to the public, and to the legal profession. Mr. Curnutte violated this factor by failing to abide by the governing rules of the State Bar that require disclosure of professional liability insurance coverage. Because the disclosure was available to the public, he allowed for the possibility that this false information would be provided to clients or potential clients. He also allowed his employee lawyer to inaccurately believe she had the protection of professional liability insurance coverage when she did not. As an officer of the court, Mr. Curnutte's duties include maintaining the integrity of the legal profession. His deceitful conduct fell short of this duty.

As to the second *Jordan*/Rule 3.16 factor, the parties stipulated that Mr. Curnutte acted knowingly and negligently. Rule 1.0 of the Rules of Professional Conduct states, in part, that "'[k]nowingly' . . . denotes actual knowledge of the fact in question." Similarly, "knowledge," for the purposes of lawyer sanctions, has been defined as "the 'conscious awareness of the nature or attendant circumstances of the conduct but without

10

the conscious objective or purpose to accomplish a particular result.'" *Lawyer Disc. Bd. v. Sayre*, 242 W. Va. 246, 253-54, 834 S.E.2d 721, 728-29 (2019) (quoting *Annotated ABA Standards for Imposing Lawyer Sanctions*, Definition (2015)). "'Negligence' is defined as a state where a lawyer fails to be aware of a substantial risk of consequences or result, and the failure amounts to a breach of the standard of care that a reasonable lawyer would exercise." *Lawyer Disc. Bd. v. Hart*, 241 W. Va. 69, 87-88, 818 S.E.2d 895, 913-14 (2018) (citing Lawyers' Manual on Professional Conduct, *Model Standards for Imposing Lawyer Sanctions*, § 01:801 Definitions (Am. Bar Ass'n 2012)). We accept the stipulation that Mr. Curnutte's conduct was knowing and negligent.

The third *Jordan*/Rule 3.16 factor assesses the amount of actual or potential injury caused by the misconduct. While there apparently was no actual harm to clients insofar as no legal malpractice claims have been made for the period in which the existence of insurance was misrepresented, Mr. Curnutte's dishonesty created the potential for harm. By misrepresenting the existence of insurance, he allowed for the possibility that his clients or potential clients would believe he had such coverage. Additionally, he allowed his lawyer employee to believe she had the protection of a professional liability policy when, in fact, there was no such coverage. We find Mr. Curnutte's dishonesty and noncompliance with the administrative rules of the State Bar and the Rules of Professional Conduct are clearly detrimental to his former attorney employee, the public, the legal system, and the legal profession.

11

The final *Jordan*/Rule 3.16 factor requires an evaluation of aggravating and mitigating factors. We first address the presence of aggravating factors. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. pt. 4, *Lawyer Disc. Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003). The parties stipulated the following aggravating factors: (1) a dishonest or selfish motive; (2) a pattern of misconduct in that the conduct involved multiple reporting years; and (3) substantial experience in the practice of law.[6]

Turning to mitigating factors, this Court has recognized that "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. pt. 2, *id*. However, we have further clarified that

> [m]itigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

---

[6] As previously mentioned, Mr. Curnutte was admitted to the practice of law in West Virginia on September 23, 1991.

12

Syl. pt. 3, *id*. The parties stipulated the following mitigating factors: (1) Mr. Curnutte does not have a prior disciplinary record;[7] (2) he has provided full and free disclosure to the HPS and has had a cooperative attitude toward this disciplinary proceeding; (3) he has made a good faith effort to rectify the consequences of his conduct; and (4) he has expressed remorse during this disciplinary proceeding.

Mr. Curnutte contends that additional mitigating factors were not considered or even acknowledged by the HPS.[8] He points to evidence he presented through his curriculum vitae and the testimony of Diane Young, Pro Bono Coordinator of West Virginia Legal Aid, which includes the following: (1) he has contributed to the development of the law as a member of the Governing Council of the West Virginia Law Institute from 2003 to the present; (2) he has served as President of the West Virginia Law Institute from 2008 to the present; (3) he has submitted numerous scholarly reports to aid the West Virginia Legislature; (4) he has actively participated in the West Virginia State Bar, most recently by serving as co-chair of the Family Law Mediation Subcommittee from 2018 to the present; (5) he has published several scholarly articles; (6) he has contributed to the practice of law by teaching various Continuing Legal Education courses from 2000

---

[7] Thirteen complaints, not including the instant matter, have been filed against Mr. Curnutte since he was admitted to practice in 1991; however, none of those thirteen resulted in any discipline being imposed.

[8] In arguing against the sanctions recommended by the LDB, Mr. Curnutte fails to suggest what he believes to be an appropriate sanction. Thus, he appears to contend that no suspension is warranted.

to the present; (7) he has contributed to the future of the law by teaching various courses at the West Virginia University College of Law continually from 2000 to the present; (8) he has an exemplary record of providing pro bono public services to the citizens of West Virginia; (9) he was awarded the Kaufman Award by the West Virginia State Bar in recognition of the fact that he provided the most pro bono public services during the award year; and (10) he has served as a member of the Pro Bono Committee of West Virginia Legal Aid. As set out above, under Syllabus point 3 of *Scott*, 213 W. Va. 209, 579 S.E.2d 550, we recognize thirteen specific categories of mitigating circumstances.[9] All this evidence fits into the same category, "(7) character or reputation." *Id.* While we recognize this evidence as demonstrating Mr. Curnutte's general good reputation, we also find that, given his association with law students through teaching at the West Virginia University College of Law, as well as his activities with the State Bar and other lawyer associations in West Virginia, it is important to emphasize the high ethical standards expected of the lawyers practicing in this State. As we frequently have reaffirmed,

> "'"[i]n deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987).' Syllabus

---

[9] In addition, Mr. Curnutte argues that he practices in a rural area of the State that is under-served by lawyers and, as a result, a large group of people in that area would suffer harm from the absence of his services. To the extent that this information does not fit within any of the recognized mitigating factors set out in Syllabus point 3 of *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003), we do not consider it.

14

Point 5, *Committee on Legal Ethics v. Roark*, 181 W. Va. 260, 382 S.E.2d 313 (1989)." Syllabus Point 2, *Committee on Legal Ethics v. White*, 189 W. Va. 135, 428 S.E.2d 556 (1993).

Syl. pt. 4, *McCorkle*, 192 W. Va. 286, 452 S.E.2d 377. Indeed, this Court has recognized that

"[n]o single transgression reflects more negatively on the legal profession than a lie." [*Astles' Case*, 594 A.2d 167, 170 (N.H. 1991)]. The honor of practicing law "does not come without the concomitant responsibilities of truth, candor[,] and honesty . . . . [I]t can be said that the presence of these virtues in members of the bar comprises a large portion of the fulcrum upon which the scales of justice rest." *Jones' Case*, 137 N.H. 351, 628 A.2d 254, 259 (1993) (quotation omitted). "Respect for our profession is diminished with every deceitful act of a lawyer." *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St. 3d 187, 658 N.E.2d 237, 239 (1995).

*Lawyer Disc. Bd. v. Munoz*, 240 W. Va. 42, 51, 807 S.E.2d 290, 299 (2017). *See also Lawyer Disc. Bd. v. Losch*, 219 W. Va. 316, 319, 633 S.E.2d 261, 264 (2006) (per curiam) (observing that "'[h]onesty is one of the cornerstones of the legal profession'" (quoting *Office of Lawyer Disc. Counsel v. Galford*, 202 W. Va. 587, 590, 505 S.E.2d 650, 653 (1998) (per curiam)).

In *Munoz*, this Court imposed a ninety-day suspension with automatic reinstatement, among other sanctions, due, in part, to Mr. Munoz's deceit in lying to a magistrate judge by insisting that he had not orally requested continuances in a DUI case,[10] making false statements about filing a timely motion to withdraw in another case, and

---

[10] The DUI case before the magistrate judge was against Mr. Munoz himself.

15

making false statements during the disciplinary process.[11]  The LDB directs this Court's attention to several cases involving dishonest conduct in which various sanctions were imposed.  *See Lawyer Disc. Bd. v. Losch*, 219 W. Va. 316, 633 S.E.2d 261 (imposing reprimand, and other sanctions, for violation of Rules 8.4(c) and 8.4(d) by altering document after it was signed by circuit court and causing it to be served on an individual);[12] *Lawyer Disc. Bd. v. Ansell*, 210 W. Va. 139, 556 S.E.2d 106 (2001) (per curiam) (suspending lawyer for sixty days, along with other sanctions, for attempting to obtain legitimately earned payment from the Public Defender's Services for two court-appointed criminal cases by altering a circuit court order from another court-appointed case); *Office of Disc. Counsel v. Galford*, 202 W. Va. 587, 505 S.E.2d 650 (1998) (per curiam) (ordering one-year suspension, and other sanctions, after lawyer forged a will following a testator's death to include an heir mistakenly omitted from original will lawyer prepared; lawyer also was criminally prosecuted and entered a nolo contendere plea); *Comm. on Legal Ethics v. Taylor*, 190 W. Va. 133, 437 S.E.2d 443 (1993) (per curiam) (adopting recommendation of two consecutive six-month suspensions, with other sanctions, for practicing law as an Assistant Public Defender while law license suspended for Mandatory Continuing Legal Education deficiencies, and for writing a check on an account with knowledge that it lacked sufficient funds and then failing to make restitution when the incident was brought to light).

---

[11] Mr. Munoz was also charged with violations of the Rules of Professional Conduct for his failures to communicate with clients and failures to expedite litigation.

[12] *Losch* involved a single act.  Unlike the instant case, there was no pattern of misconduct.

16

Having fully considered the record in this matter, along with the parties' arguments, the *Jordan*/Rule 3.16 factors, including aggravating and mitigating circumstances, and other disciplinary cases involving instances of dishonesty, we conclude that a ninety-day suspension with automatic reinstatement under RLDP 3.31,[13] along with the other recommended sanctions modified to comport with automatic reinstatement, provides an adequate sanction for Mr. Curnutte's misconduct in this case.

---

[13] According to RLDP 3.31,

[w]hen a lawyer has been suspended for a period of three months or less, and all other requirements as to restitution, conditions, or some other act shall be satisfied, the lawyer's reinstatement to the practice of law in this State shall be automatic, unless otherwise provided in the order of suspension, upon satisfaction of all membership requirements of The West Virginia State Bar, including fees and mandatory continuing legal education, unless otherwise provided in the order of suspension. Failure to comply with all requirements as to restitution, conditions, or some other act incident to the suspension, shall constitute an aggravating factor in any subsequent disciplinary proceeding. The lawyer shall provide written documentation to the Office of Disciplinary Counsel no later than fourteen days prior to the effective date of reinstatement that all terms and conditions imposed by the Supreme Court of Appeals have been satisfied. Thereafter, if the Office of Disciplinary Counsel shall determine that all terms and conditions of reinstatement have not been satisfied, it shall inform the Supreme Court of Appeals prior to the effective date of reinstatement in order that compliance with its directives can be compelled.

## IV.

## CONCLUSION

Based upon the foregoing analysis, we find the sanctions set out below will accomplish the goals of our lawyer disciplinary system by appropriately punishing Mr. Curnutte's misconduct, serving as a deterrent to other members of the Bar, and restoring public confidence in the legal profession. *See* Syl. pt. 4, *McCorkle*, 192 W. Va. 286, 452 S.E.2d 377. Accordingly, we impose the following sanctions:

A. Mr. Curnutte's law license is suspended for ninety days with automatic reinstatement under RLDP 3.31;

B. Mr. Curnutte must complete an additional six hours of Continuing Legal Education in ethics prior to his automatic reinstatement;

C. Mr. Curnutte must comply with the mandates of RLDP 3.28, which sets out the duties of disbarred or suspended lawyers;

D. Mr. Curnutte must reimburse the costs of these proceedings pursuant to RLDP 3.15 prior to his automatic reinstatement; and

E. Mr. Curnutte shall, prior to his automatic reinstatement, fully and accurately disclose to the LDB what efforts, if any, he has made to procure professional liability insurance.

Law License Suspended and Other Sanctions Imposed.